1

```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF VIRGINIA
                      ALEXANDRIA DIVISION

UNITED STATES OF AMERICA,   )  Case 1:11-cr-115
                            )
           Plaintiff,       )
                            )
      v.                    )  Alexandria, Virginia
                            )  September 13, 2023
JORGE AVILA TORREZ,         )  1:34 p.m.
                            )
           Defendant.       )
_____)  Pages 1 - 17


            TRANSCRIPT OF STATUS CONFERENCE

       BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.

            UNITED STATES DISTRICT COURT JUDGE
```

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1  APPEARANCES:

 2  FOR THE PLAINTIFF:

 3      JAMES L. TRUMP, ESQUIRE
        OFFICE OF THE UNITED STATES ATTORNEY
 4      2100 Jamieson Avenue
        Alexandria, Virginia  22314
 5      (703) 299-3700

 6  FOR THE DEFENDANT:

 7      JOAN C. ROBIN, ESQUIRE
        LAW OFFICE OF JONI C. ROBIN, PLLC
 8      114 North Alfred Street
        Alexandria, Virginia  22314
 9      (703) 349-1111

10      JOANNE M. HEISEY, ESQUIRE
        SAMUEL J.B. ANGELL, ESQUIRE
11      OFFICE OF THE FEDERAL PUBLIC DEFENDER (PA)
        601 Walnut Street, Suite 545 West
12      Philadelphia, Pennsylvania  19106
        (215) 928-0520
13
    THE DEFENDANT, JORGE AVILA TORREZ, IN PERSON
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2         (The defendant is not present.)
 3             THE COURTROOM DEPUTY:  The court calls
 4  Criminal Case *United States of America v. Jorge Avila
 5  Torrez*, Case No. 2011-cr-115.
 6             May I have appearances, please, first for the
 7  government.
 8             MR. TRUMP:  Good afternoon, Your Honor.  Jim
 9  Trump on been behalf of the United States.
10             THE COURT:  Good afternoon, sir.
11             MS. HEISEY:  Good afternoon, Your Honor.  I'm
12  Joanne Heisey with the Capital Habeas Unit for the
13  Federal Defender's Office in Philadelphia, and I'm with
14  my cocounsel, Sam Angell and Joni Robin.
15             THE COURT:  Very good.  Welcome.
16             MR. ANGELL:  Good afternoon, Your Honor.
17             THE COURT:  Welcome.
18             Counsel, I'm sure you're aware we've had some
19  issues.  What I'm going to do is I'll take your items
20  that you don't need to have with you other than the
21  papers.
22             I think the marshal service is going to have
23  him seated away from you-all.
24             MS. ROBIN:  Should I stay here or move?
25             THE COURT:  I think you should sit in the
```

```
 1  gallery.  I'm not ordering you to.
 2              MS. ROBIN:  Thank you.
 3              THE COURT SECURITY OFFICER:  Sir, the
 4  marshals are heading back now.
 5              THE COURT:  Off the record.
 6       (Off-the-record discussion held.)
 7              THE COURT:  You can present your oral
 8  arguments initially.  That would be helpful to the
 9  Court.
10              MR. ANGELL:  Could Your Honor -- if Your
11  Honor is giving us instructions, would you give them
12  again.
13              THE COURT:  I said based on the circumstances
14  that I anticipate we're going to face, I would ask --
15  let you know that I'm aware of everything that's been
16  filed in the matter and that you present any oral
17  arguments efficiently.
18              MR. ANGELL:  Thank you.
19              THE COURT:  Ms. Robin can interpret for you.
20  She knows how I operate, so she can tell you what's
21  going on.
22       (The defendant enters.)
23              THE COURT:  Counsel in the matter of *United
24  States v. Mr. Torrez* is now all present.
25              This comes on a 2255.  I'll let you-all take
```

1  the lead, Defense Counsel.

2  　　　　　MS. HEISEY:  Thank you, Your Honor.

3  　　　　　As you're aware, this is a capital habeas
4  proceeding.  Our office was representing Mr. Torrez in
5  2018.  Last year Mr. Torrez filed a request to
6  represent himself in these proceedings before we had
7  had an opportunity to file our habeas petition.  So at
8  that point, the court continued the hearing, and the
9  parties met to discuss Mr. Torrez's request.

10 　　　　　And at that point, the court Ordered a
11 competency evaluation for Mr. Torrez, and he appointed
12 Dr. Richard Ratner to conduct the evaluation.

13 　　　　　Dr. Ratner had an initial meeting with
14 Mr. Torrez, I believe, in January of this year.  And
15 both myself and counsel for the government have been in
16 touch with Dr. Ratner, and his evaluation of Mr. Torrez
17 is still ongoing.  Although he had an initial meeting,
18 he's reported to us that he still requires a second
19 meeting with Mr. Torrez in order to complete his
20 competency report.  Although, he stated that he is near
21 to being finished with it.

22 　　　　　There was some -- they recently -- Mr. Torrez
23 was transported to the Northern Neck facility, but now
24 that he's back here in the Alexandria facility, my
25 understanding is that it's Dr. Ratner's hope to be able

1  to see him for that second evaluation this week while
2  he's here in Alexandria.  And we'd ask that he be able
3  to remain here until Dr. Ratner is able to complete
4  that second evaluation and complete his report for the
5  Court.
6          The only other thing that I would just note
7  for the record -- I'm sure that Your Honor is aware,
8  but it's been our position all along that this
9  competency evaluation is sort of beside the point.
10 Because Mr. Torrez doesn't have a right to represent
11 himself in these proceedings, and our position is the
12 Court should simply --
13         THE COURT:  So the analysis is somewhat
14 attenuated.  I agree absolutely that he does not have a
15 right to represent himself in a 2255 case.  But there
16 does seem to be some authority out there to address the
17 ability of a person from a competency standpoint to
18 even ask the Court for that ability.  So I think we
19 still have to go through that battle of competency even
20 though it's not the traditional competency assessment.
21 But we still have to go through that before we can
22 actually get to that.
23         MS. HEISEY:  I agree, Your Honor, when it
24 comes to competency.  The standard here, as we've
25 hashed this out with the Court in our briefing and

1  prior argument that's all part of the record.  But the
2  standard governing this determination would be
3  different from --
4             THE COURT:  A trial.
5             MS. HEISEY:  Exactly.
6             But I just wanted to note that's our
7  position.  Again, that's all been briefed and is in the
8  record.
9             I don't think I have anything to add at this
10 point other than just to say that, you know, the status
11 of the case is that we're simply awaiting Dr. Ratner's
12 competency report.  And once we receive that, then we
13 can sort of regroup and discuss what the next step will
14 be from there.
15            THE COURT: Very good.  Thank you, Counsel.
16            Mr. Trump, anything, sir?
17            MR. TRUMP:  Judge, as to status, I agree with
18 counsel that we are awaiting Dr. Ratner's report.  I
19 spoke with him a little over a week ago, and he
20 indicated that he has one more session to go with
21 Mr. Torrez.  He wasn't sure how long after that his
22 report would be finished.
23            As to the pending issues, I would ask the
24 Court to perhaps prejudge whether there is a right and
25 to what degree it can be exercised.  Because I think

1  there were some unanswered questions in the prior round
2  of briefing, and we put that off pending the whole idea
3  of competency.
4           But I would note that it's the government's
5  position that there is a right.  And if there is a
6  right, it can be waived.  But to what degree the Court
7  must allow Mr. Torrez to proceed *pro se*, if he
8  exercises that right, or to what extent the Court has
9  discretion is the issue that was pending before Judge
10 O'Grady.
11          In any event, I think once the report is
12 issued or digested, and we can confer with each other
13 and present to the Court a schedule for briefing and
14 subsequent hearings.
15          There is one open issue here.  Judge O'Grady
16 had appointed Mr. Hundley as an independent counsel for
17 Mr. Torrez.  It's my understanding that Mr. Torrez does
18 not wish to meet with Mr. Hundley believing that he is
19 sort of part and parcel of this team when he's really
20 not.  He is independent.
21          But one of the issues that we are unclear of
22 is to what exactly it is that Mr. Torrez wants to do.
23 Does he want to waive his 2255?  Does he want to
24 proceed *pro se*?  Does he want to have some control over
25 the issues with the 2255 but yet have counsel?

1            And the reason I raise this is that this same
2    issue came up prior to trial.  The initial motion that
3    Mr. Torrez made *pro se* was that he wanted to represent
4    himself.  But then after receiving the advice of an
5    independent attorney and having a series of *ex parte*
6    hearings with the court, he decided he doesn't want to
7    proceed *pro se* but he wants to proceed with new
8    counsel.  That's how it was resolved.
9            So even though the posture now is that
10   Mr. Torrez says he wants to proceed *pro se*, this may
11   change if he understands the ramification of that
12   decision.  And that's why Mr. Hundley was appointed.
13           I say all of this to ask the Court to advise
14   Mr. Torrez that Mr. Hundley is an independent attorney
15   and that it would be in his best interest to at least
16   meet with Mr. Hundley and tell Mr. Hundley what it is
17   that he wants.  So then Mr. Hundley can inform the
18   Court and the parties because that will shape
19   subsequent briefing and hearings.  But as of right now,
20   we really don't have a clear idea of what that is.
21           THE COURT:  Okay.  Thank you, Mr. Trump.
22           For the record, the Court will say the
23   following things:
24           Mr. Torrez, I am saying these things for your
25   benefit.  You may remain seated.

1           There are a lot of things that we need to do
2   to prepare this matter, which is on for trial for an
3   ultimate disposition.
4           As Mr. Trump has noted, attorneys have
5   different roles and responsibilities in the disposition
6   of this matter.  A lot of it depends on you, but the
7   bottom line is not much of it is going to be
8   accomplished unless we are able to get a proper
9   evaluation from a healthcare provider.  That's where
10  you will be somewhat in control of the agenda, by
11  working with this individual.  Because the Court needs
12  to make all kinds of determinations as to how we go
13  forward from here.
14          So you are in control of many things, but
15  nothing can be done of any significance unless you are
16  able to meet with the healthcare providers and people
17  who are interested in your position and your interest
18  in the case.
19          So while I can't advise you to do anything, I
20  suggest to you that things are going to likely work
21  better in your favor if you cooperate with people who
22  are trying to get this matter in the best posture
23  available.  So do what you think you need to do.  Take
24  the advice of counsel.  Listen to what they have to say
25  and make your own best determinations.

1                    Do you have any questions, sir?
2                    THE DEFENDANT:  Due to my health condition at
3    the jail right now, I don't know when he can come see
4    me.
5                    But I protested the conditions there for the
6    trays and stuff and the way they are just treating us
7    over there.  I'm not eating.  I'm not drinking.
8                    So I don't know if it would be a good idea
9    for me to meet with him while I'm at Alexandria Jail.
10   It would have been better if at Northern Neck.  I had
11   no problems over there.  I had no issues over there.
12   The jail here has me lying down basically with no
13   access to nothing.  The only thing sitting in my cell
14   right now is a mattress and role of toilet paper.
15   That's it.
16                   THE COURT:  Sir, I would suggest to you that
17   working your way through the circumstances that you are
18   facing in Alexandria will probably result in your
19   return to Northern Neck.  The quicker you cooperate,
20   the quicker you can probably get back to Northern Neck.
21                   So these are decisions that you are going to
22   have to make for yourself.  I'll suggest to you that
23   the more cooperation you give with the facilities in
24   Alexandria, the more likely you will be able to return
25   to where you are comfortable at Northern Neck.

 1            THE DEFENDANT:  I don't see why I had to come
 2  to Alexandria in the first place.  Because Northern
 3  Neck has inmates' counsel come here for court all the
 4  time.  There's no reason why I have to be housed in
 5  Alexandria.
 6            THE COURT:  I understand your point, sir.  I
 7  hope you understand mine.  The best way to get back to
 8  Northern Neck is to try to go through Alexandria as
 9  efficiently as possible.
10            THE DEFENDANT:  Before, when Judge O'Grady
11  was here -- I haven't told you.  It's the first time
12  I've seen you, Your Honor.
13            I've cut off all communications with my
14  attorneys, no legal calls, no legal visits.  I had
15  asked Judge O'Grady, if there's going to be something
16  filed or something is going to happen, to have the
17  court notify me directly.  He said he did that, but I
18  near never received anything from the court.
19            THE COURT:  Let me make a note in the record
20  that anything the lawyers receive in the case, that you
21  also get a copy of.
22            THE DEFENDANT:  I don't wish to meet with
23  them, even Mr. Hundley.  He's already violated the
24  client confidentiality agreement.  I told him stuff in
25  confidence that I didn't want them to know.  He told

1  them.  That's why I cut off communications with him.
2           Just recently, Rachel Primo, she used to be
3  an investigator.  She came back after I tried to get
4  rid of them, and she violated that by telling my family
5  I am on a hunger strike.  That's none of their
6  business.
7           Everything I signed previously, I want voided
8  and nullified.  I don't want them --
9           THE COURT:  As I said, there are certain
10 things that I have to do to even bring out the
11 possibility of removing them from the case.  There's
12 certain things that I have to do, but I can't do those
13 things unless and until I get information I need to
14 make the best call that I need to make.
15          So, again, I appreciate what you're saying,
16 and I understand your position in the matter.  We need
17 to work through this together, and to a large degree,
18 you are in control as to how we work through this
19 thing.
20          If you don't want to cooperate, then I
21 suggest you -- if you don't want to cooperate, then I'm
22 not going to be able to do my job.
23          THE DEFENDANT:  What would be a faster
24 outcome?  Trying to get rid of attorneys or just --
25          THE COURT:  Well, as I'm sure you understand,

1  I haven't read some of the documents that have been
2  filed in the matter.  It's a different determination
3  the Court has to make as to whether or not you can
4  represent yourself in the contest of this type of
5  hearing as opposed to the original trial.  There's a
6  different analysis that needs to take place.
7           THE DEFENDANT:  What about the 2255, just
8  dropping it, waiving my rights?
9           THE COURT:  My concern is if you want to drop
10 that without the ability of the Court to review medical
11 records to make sure you are making a competent and
12 voluntary and prudent decision to make, then I would
13 not be doing my job.  I am going to make sure I do
14 everything I need to do to protect your rights.
15          All right, sir?
16          THE DEFENDANT:  I mean, the worst outcome
17 already happened.  I've been sentenced to death.  I got
18 a state case -- at least two different state cases.
19 Even if I beat the federal case, I'm not getting out.
20 What harm can come from me representing myself?  There
21 is no more harm that can happen to me.  The worst has
22 already happened.
23          THE COURT:  Again, the constitution requires
24 that we take certain steps to protect your rights from
25 the beginning of trial until the end of disposition of

1   the matter.  This particular judge is going to do
2   everything that he can to make sure that the right
3   things happen as we go through the process.
4           THE DEFENDANT:  Seeing counsel right now -- I
5   mean, I've talked to them in person, over the phone, in
6   letters.  They just don't seem to understand what I
7   tell them.  So I mean, I got no trust in them.  They
8   can't properly represent me if they don't understand.
9   They completely don't understand me, the stuff that I
10  told them before when I was working with them.
11          THE COURT:  Let me hear from the government
12  one last time.
13          You can have a seat, sir.
14          MR. TRUMP:  Just so Mr. Torrez knows,
15  Dr. Ratner plans to visit him Friday at ADC and the
16  marshals may transport him back to Northern Neck on
17  Saturday.  That's the way it stands now.  The reason he
18  was brought here was for this hearing, as well as for
19  Dr. Ratner, so he can complete the report and for no
20  other reason.
21          THE COURT:  Well, sir, what was essentially
22  said in court is you can be back at Northern Neck as
23  early as Saturday or Sunday.  Again, it depends on what
24  you do.
25          THE DEFENDANT:  Being transported back and

1  forth I keep losing all my property.  My family doesn't
2  even know where I'm at right now.  They think I'm still
3  at Northern Neck.  I can't even notify people right now
4  I'm in Alexandria.  I haven't had a shower, toothpaste,
5  toothbrush.  I can't even brush my teeth.
6           THE COURT:  I will direct that the
7  individuals at the Adult Detention Center in Alexandria
8  make note to inform your family where you are and when
9  you return back to Northern Neck.
10          All right, sir.  Thank you.  You're remanded
11 to the United States Marshal.
12          MR. TRUMP:  Your Honor, there is one other
13 thing we need to put on the record.
14          THE COURT:  Yes, sir.
15          MR. TRUMP:  The procedural context we're in,
16 the 2255 context, has a statute of limitation.  The
17 government has indicated that it will not assert a
18 statute of limitation defense upon the filing of a
19 Section 2255 motion for reasons that we've put on the
20 record previously.  So we have stated that until all of
21 this is resolved, we will continue in that posture.
22 The government would not raise the statute of
23 limitation as a defense upon the filing of the 2255
24 motion.  I just want to make sure that's on the record.
25          THE COURT:  That will be made part of the

```
 1   record.
 2              MS. HEISEY:  Can I ask one last thing too,
 3   Your Honor?
 4              THE COURT:  Yes.
 5              MS. HEISEY:  When we convened the last time,
 6   Judge O'Grady had asked that we submit the current
 7   draft of our habeas petition both to Dr. Ratner and to
 8   Mr. Torrez so that they could both see that as part of
 9   Dr. Ratner's assessment of Mr. Torrez's competency to
10   be able to handle these proceedings.
11              We did submit to Dr. Ratner, as well as to
12   the Court and mailed a copy to Mr. Torrez as well.  As
13   he mentioned, he's not receiving legal mail from us.
14   So I have a copy in case he hasn't -- I don't know if
15   he's already received that.
16              THE COURT:  What we can do is, if you want
17   to, you can provide a copy of it to the Court and the
18   Court will make sure that it goes through the proper
19   chain to get to Mr. Torrez.
20              MS. HEISEY:  Thank you, Your Honor.
21              THE COURT:  Thank you, sir.
                 ----------------------------------
22                       Time:  2:03 p.m.
23      I certify that the foregoing is a true and
      accurate transcription of my stenographic notes.
24
                                     /s/
25                           Rhonda F. Montgomery, CCR, RPR
```