IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.                                                     No. 1:11-cr-115 (LO)

JORGE AVILA TORREZ.,

Defendant.

## MEMORANDUM OF THE UNITED STATES REGARDING THE DEFENDANT'S DESIRE TO REPRESENT HIMSELF

This Court again must determine whether the defendant, Jorge Torrez, desires to represent himself and is competent to make such a decision. These same issues confronted the Court in 2012, prior to trial. At that time, Torrez apprised the district court of disputes with his then-counsel concerning the scope and conduct of his attorneys' mitigation investigation, and he sought the approval of the Court to proceed *pro se.*

The Court initially denied the request on the basis that Torrez was incapable of addressing the unique and complex issues in a capital case. Torrez, however, persisted in his demand that he be permitted to represent himself or otherwise have substitute counsel appointed. The Court, *sua sponte*, ordered a competency evaluation and appointed independent counsel to advise Torrez throughout the competency proceedings. The expert psychiatrist, Dr. Richard A. Ratner, found that there was "no doubt" that Torrez was competent to stand trial and concluded "with reasonable medical certainty that Mr. Torrez does not suffer from a diagnosable mental illness." Dr. Ratner also concluded that Torrez was competent to represent himself, subject to the court's views about Torrez's "technical abilities" to handle the trial.

At a hearing on February 22, 2013, Torrez acknowledged that it was "not in my best interests to represent myself," and he asked the district court to appoint substitute counsel. The Court granted his request. Now, ten years later, the Court must revisit these issues, albeit in a different procedural and legal context.

### 1. Torrez's Request

By handwritten letter dated April 1, 2022 (filed April 5, 2022), Torrez stated that he would like to represent himself and that he no longer wished to be represented by his appointed counsel (Dkt. 500). He reiterated that request by handwritten letter dated May 9, 2022 (filed May 13, 2022), and he further indicated that he has "broken off all form of communications with [his] attorneys" (Dkt. 503). Torrez submitted a third handwritten letter dated July 8, 2022 (filed July 12), after the Court had appointed independent counsel for Torrez, in which Torrez again stated that he wished to represent himself (Dkt. 509). Torrez advised:

> Let me make one thing clear tho[ugh]. I asked to represent myself
> in court. I did not ask for new attorneys and I do not want new
> attorneys. I can and will speak for myself.

While it appears that Torrez has made an unequivocal request to represent himself and not to ask for substitute counsel, the Court, we submit, should explore, on the record, the specific reasons for his decision. In making this inquiry, the Court should ask Torrez to explain, with some specificity, the reasons for his disagreement with his appointed habeas counsel and the breakdown of attorney-client communications. Torrez should be asked, if he is permitted to represent himself, whether he plans to file a *pro se* Section 2255 motion or will he waive his right to file such a motion – in other words, does he wish to be executed. There are obviously huge differences in the potential consequences of those decisions, a subject which must be further explored in a competency evaluation and in a subsequent colloquy with the Court

2

(assuming Torrez is found competent). The Court's questioning may also reveal, as it did previously, that Torrez does not want to represent himself at all, and he may instead simply want different counsel.

Based on Torrez's mental health history, we are reasonably certain that Torrez does not suffer from a mental disease or defect that would render him incompetent to represent himself. But, as discussed below, more than the lack of a mental illness is required for a finding that Torrez is competent to represent himself in a Section 2255 proceeding, and the Court needs to know more precisely what Torrez wants to do.

### 2. Competency for Self-Representation

To determine whether Torrez is competent to represent himself, to include whether he is competent to file a Section 2255 motion without the assistance of counsel and whether he is competent to waive that right, both an examination by a qualified psychologist or psychiatrist and a hearing are required.

The competency examination must determine whether Torrez suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the Section 2255 proceedings. The examination must also determine whether Torrez has the mental capacity to perform the basic tasks of self-representation. *United States v. Roof*, 10 F.4th 314, 362 (4th Cir. 2021) (per curiam) (citing *United States v. Bernard*, 708 F.3d 583, 589-90 (4th Cir. 2013)); *see also Indiana v. Edwards*, 554 U.S. 164, 175-76 (2008) (finding that the standard for competency for self-representation focuses on a defendant's ability to "carry out the basic tasks needed to present his own defense without the help of counsel"). The examination must also probe whether Torrez understands the

3

consequences of self-presentation and, in particular, the consequences of choosing not to file a Section 2255 motion.

If Torrez is deemed competent, the Court must then conduct a hearing to determine whether Torrez's desire to waive counsel is clear and unequivocal, knowing, voluntary, and intelligent. As noted in *Roof*, 10 F.4th at 360, there is no script or formula for the Court to follow in assuring itself that this standard has been met. The Court simply must question Torrez extensively as to his intentions, his knowledge of the proceedings, his ability to carry out the basic tasks for self-representation, and, importantly, the consequences of his decision, that is, the "dangers and disadvantages of self-representation." *United States v. Duncan*, 800 F.3d 642, 649 (4th Cir. 2015).

### 3. Torrez's Right to Represent Himself

The American legal system confers on a client the power to make fundamental decisions about litigation, in both civil and criminal cases. Lawyers do not erase a client's autonomy. Just as a client, not a lawyer, decides whether to sell an asset, enter into a marriage, or settle a lawsuit, so too, a criminal defendant decides whether to plead guilty, for example. As the Restatement (Third) of the Law Governing Lawyers explains, the decision on "whether and on what terms to settle a claim," "how a criminal defendant should plead," and "comparable decisions" are "reserved to the client." § 22(1) Authority Reserved to a Client (2000). And "a client may revoke a lawyer's authority to make" such a decision. § 22(3).

In keeping with the principle that a lawyer is merely an agent, American law has recognized the importance of the right to self-representation since the beginning of the United States. "The Founders believed that self-representation was a basic right of a free people." *Faretta v. California*, 422 U.S. 806, 830 n.39 (1975). Thus, in a criminal case, "the *pro se*

defendant is entitled to preserve actual control over the case he chooses to present to the jury."
*McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984).  Although the constitutional right to self-representation recognized in *Faretta* does not apply in post-conviction proceedings, *see, e.g., Martinez v. Ct. of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000) (*Faretta*'s constitutional right "was confined to the right to defend oneself at trial."), parties do have a long-recognized and important statutory right to represent themselves under 28 U.S.C. § 1654.

The statutory right to self-representation was adopted in § 35 of the Judiciary Act of 1789 and, as Judge Friendly has noted, "is a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case." *O'Reilly v. New York Times*, 692 F.2d 863, 867 (2d Cir. 1982).  Section 1654 provides, "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  The Supreme Court has explained that "[t]here is no question that a party may represent his or her own interests in federal court without the aid of counsel."  *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 522 (2007) (citing 28 U.S.C. § 1654); *see also Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 243 (4th Cir. 2020).

The Fourth Circuit has held that a defendant's right to self-representation at a capital sentencing includes the right to choose not to present a mitigating factor to the jury.  *See Roof*, 10 F.4th at 357–58.  And that principle has been faithfully applied in this case.  The Fourth Circuit upheld on direct appeal Torrez's competency to decline to present a mitigation defense at his capital sentencing.  *Torrez*, 869 F.3d at 322–23.  Again, even when a defendant is represented by counsel, and has a right to counsel, under the Sixth Amendment, "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty,

waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action." *Florida v. Nixon*, 543 U.S. 175, 187 (2004). More generally, "Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (citing *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)). And "a federal court does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system." *Wood v. Milyard*, 566 U.S. 463, 472 (2012) (citing *Greenlaw*, 554 U.S. at 243–44).

In post-conviction proceedings, a defendant does not have a constitutional right to counsel. *See, e.g., Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings.") (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). As a capital defendant, however, Torrez does have a statutory right to counsel in post-conviction litigation under 18 U.S.C. § 3599(a)(1)(B). But there is no basis for treating § 3599(a)(1)(B) as eliminating the statutory right to self-representation under § 1654. Although, under 18 U.S.C. § 3599(a)(1), "Congress clearly expects that petitioners under sentence of death will be represented by counsel in non-frivolous federal habeas proceedings[,] … a petitioner may waive that statutory right." *Hunter v. Delo*, 62 F.3d 271, 276 (8th Cir. 1995). If a defendant may represent himself when he has a constitutional right to appointed counsel, the defendant may also exercise his statutory right to self-representation when he has a statutory right to counsel. Again, "a habeas petitioner does have a statutory right to self representation." *Scott v. Wainright*, 617 F.2d 99, 102 n.3 (5th Cir. 1980).

6

Torrez's current counsel have analyzed this case as if Torrez were (belately) asking for different counsel. *See, e.g., Martel v. Clair*, 565 U.S. 648, 652 (2012). But Torrez is not attempting to insert a different attorney late in the proceedings; rather, Torrez wants to represent himself while his legal position in his § 2255 is still being formulated. "The right of self-representation exists 'to affirm the dignity and autonomy of the accused.'" *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (quoting *Wiggins*, 465 U.S. at 176–77). Of course, as the Fourth Circuit has explained about the right to self-representation at trial, the right may not "be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *Frazier-El*, 204 F.3d at 560. And comparable principles should undoubtedly apply to any statutory right of self-representation. But none of those concerns can be said to apply here. Rather, Torrez evidently disagrees with his counsel about what claims and arguments should be presented in his § 2255 – disagreements that go directly to the core of why the right to self-representation exists. And the ultimate decisions on those matters are not transferred to the lawyers because they have conducted legal research and worked on pleadings before the disagreements came to a head. Lawyers cannot work themselves into controlling the decisions of a client who disagrees.

As noted, Torrez's request for to represent himself should be unequivocal, and it should be made after warnings about the dangers of self-representation. *See, e.g.*, *Iowa v. Tovar*, 541 U.S. 77, 88–89 (2004). And he should be deemed competent to make the decision to represent himself. In addition, a defendant does not have a right to hybrid representation where the defendant files some pleadings *pro se* and some through counsel. *See, e.g., United States v. Williams*, 5 F.4th 500, 511 n.7 (4th Cir.), *cert. denied*, 142 S. Ct. 625 (2021); *United States v. Penniegraft*, 641 F.3d 566, 569 n.1 (4th Cir. 2011)). But Torrez has made no such request..

Once this Court determines that Torrez is competent to decide to represent himself, has been informed of the dangers, and is making an unequivocal request to represent himself, his right to self-presentation must be vindicated.

A defendant's appointed counsel may not override a defendant's request and continue litigating contrary to the defendant's wishes. "[T]he scope of any federal doctrine of 'next friend' standing is not broader than what is permitted by the habeas corpus statute," and "one necessary condition for 'next friend' standing in federal court is a showing by the proposed 'next friend' that the real party in interest is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability." *Whitmore v. Arkansas*, 495 U.S. 149, 164–65 (1990); *see also Rees v. Peyton*, 384 U.S. 312, 314 (1966).

**4. Torrez's Right to Decide the Arguments to be Made in a Section 2255 Motion**

Defense counsel's position has been that counsel is charged with the sole responsibility of deciding the specific issues that should be raised in Torrez's Section 2255 motion. The government concedes that there are certain strategic decisions that counsel, rather than a client, may make in criminal litigation. Courts appear, however, to have difficulty in defining the limits of the authority of counsel to make certain decisions. In *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018), for example, the Supreme Court held that a capital defendant had a Sixth Amendment right to instruct his trial counsel to refrain from admitting three murders during the guilt phase, even though trial counsel reasonably believed that admitting guilt afforded the defendant a better chance of avoiding a death sentence. The Court found that choice to be an "objective" of the defense rather than a matter of "trial management" and, therefore, within the power of the defendant, not counsel, to decide. In *Roof,* however, the Fourth Circuit distinguished *McCoy* by characterizing the possible presentation of mental health evidence

8

during the capital sentencing phase as a matter of "trial strategy" rather than an "objective" of the defendant. 10 F.4th at 353.

At this point, the government does not know whether the breakdown in communication between Torrez and his appointed counsel concerns certain issues that Torrez wants to exclude or include in his Section 2255 motion. At trial a decade ago, that was the primary dispute between Torrez and his trial counsel. Whether history has repeated itself, we do not know. Once it becomes clear what Torrez wants and whether his dispute focuses whether to present or exclude certain arguments, the Court can then address those issues.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      /s/
James L. Trump
Richard Cooke
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3726
Email: jim.trump@usdoj.gov

9

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of February, 2023, I caused the foregoing document to be served on all counsel of record through the Official Court Electronic Filing System.

_____/s/_____
James L. Trump
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3726
jim.trump@usdoj.gov
